All right. Well, thank you. And thank you, counsel, for joining us remotely today. My name's Bridget Beatty. I'm a circuit judge with my chambers in Phoenix, Arizona. I'm very pleased today to be sitting with Judge John Owens, who's a circuit judge with his chambers in San Diego, California, and Judge Daniel Bress, who's a circuit judge with his chambers in San Francisco, California. First case is Kimberly Therese Askew v. County of Clark. And Ms. Armini, did you wish to reserve any time for rebuttal? Yes, Your Honor. I'd like to reserve three minutes, please. All right. Just keep an eye on the clock. Please go ahead whenever you're ready. Thank you. May it please the Court. My name is Paola Armini, and I represent the District Court. Ms. Askew's search and seizure claims, which were in her complaint as Claims 1 through 3, are not barred by HEC. Ms. Askew's Fourth Amendment claims do not necessarily imply that her two misdemeanor convictions would be invalid. If we're looking at the record of the actual plea, what we'll see is that there was no factual basis for the plea. Unlike normal plea agreements, where there may be a factual section, there was no such written agreement in this case. There was also not a formal plea where the judge was asking questions as to what the factual basis was for the plea, or Ms. Askew to agree as to what the factual basis was for her plea. Counsel, didn't the charges indicate that they were for animal cruelty based on the animals being emaciated? Your Honor, the language that she pled to, no contest, was that the failure to provide subsidence, food and drink, or food or drink. And so that was the basis for the misdemeanor conviction that she pled no contest to. So we have that factual information. Yes, Your Honor. So what evidence is there outside of what the officers and the animal control officers identified through the search and seizure? Was there other evidence that could have supported her plea? Yes, Your Honor. There in fact was. There were several things, which are actually outlined in Defendant Southwell's declaration of arrest, where she references both witnesses. There were two witnesses that were present, lay witnesses, not law enforcement witnesses, that actually observed the dogs. They actually provided statements. There were also photographs, some of which were shown to the defendants in this case. Further, there were the defendants' own observations of some of the dogs, specifically the three dogs in the car that Detective Southwell saw, and the correction officers, I apologize, animal control officers also saw a variety of in the charges, one from the home, one from the house. I think their names were McDaniel and Jester. So is this evidence, was this sufficient to put these, not just put the officers on notice, but to establish the facts for the conviction for these two dogs? Yes, Your Honor, I believe so. I believe that this other evidence could have been something that the district court could have looked at. Instead, the district court looked at the facts and weighed the evidence in favor of the moving party instead of the non-moving party, and did not even analyze some of these other facts that we're discussing right now. What about... I guess what I'm asking is, was it specific enough? I mean, you're saying that there were some observations before the search and seizure, there were photographs, etc. Were they specific enough, and were they of these particular dogs? I can say specifically for Jester, Jester was in the vehicle. So I think for Jester, yes, absolutely. Candidly, with McDaniel, I don't recall, as I sit here right now, if McDaniel was one of the dogs that was coming in and out of the house during the time period. What do we do with the statement in the motion to suppress that says that the criminal convictions were based exclusively upon the direct and derivative fruits of the warrantless search of the home and the car? Well, as far as collateral estoppel relates to the motion to suppress, I think if the court... I think, number one, we have to look at Nevada law for that. Well, let's put collateral estoppel aside. I'm just thinking about this more in terms of heck, and we're asking what was the basis for this guilty plea? And we have a statement made on behalf of your client that says that these charges are based exclusively upon the search of the home and the car. And now the argument seems to be that, in fact, there was all this other evidence that would independently sustain the guilty plea, but that seems at odds with the statement here in the motion to suppress. Well, Your Honor, I think the motion to suppress, it was based... We were in a criminal proceeding and there were different factors. We were certainly trying to suppress the evidence. I don't think that necessarily means suppress the evidence that was in the house. I think what's not clear is, in addition to the motion to suppress, which we did not have at the time that we challenged the search of the house, is we had the subsequent also consent issue where she signed off on the surrender form. That ended up being a whole other issue that was never litigated in front of the Justice Court because the video was not something we had at the time. But regardless, I think if we're talking about whether we would invalidate the plea here, and I think because there's additional evidence here that was before the Justice Court, the declaration of arrest was attached to the state's opposition to the motion to suppress. So it was clearly in the record as well that there was this other evidence. And so if the question is... And frankly, even if the motion to suppress would have been granted, playing it the other way, even if it would have been granted, that would have not necessarily dismissed the entire case. Now, candidly, would it have made the state's case not as strong? Probably. But I think, frankly, even if the motion to suppress was granted, a prosecutor could have gone forward with some of this other evidence that was seen before they even searched the house. And especially when we're looking at misdemeanor convictions for failing to provide enough substance, frankly. The motions were granted. So should we be concerned that allowing this suit to proceed would be inconsistent with what occurred in the state court where the court found that there was consent for both the search of the house and the vehicle and the seizure? I'm not sure, Your Honor, that the order isn't as quite clear. It does talk about consent for the search. Again, if we're going back to... If we're talking about... Are we still sure? Sure. I mean, part of the concern is that inconsistent proceedings are results, and it seemed that the state court found that there was consent for these searches and for the seizure. I still think under... If we're dealing with a collateral estoppel issue under Nevada law, I think the answer is no. Because the issue of litigating the motion to suppress is not necessarily related to the end convictions. And again, we're sort of guessing on what we think the plea was related to. Because we don't have... We don't have what we traditionally would have in a felony criminal case or even, frankly, in a state felony case or more severe case. There just simply isn't that factual basis. So no, I don't think it does preclude. I think we're... I think, if I'm being candid, the potential here is if the court believes it's identical, then I think that perhaps the search of the house could, frankly... That may fall under a collateral estoppel issue, although I don't think it's relevant to the ultimate judgment for the conviction. But saying that, if we're looking at that, I think that is a possibility. But I do not think that the justice court's decision would take away the seizure argument or the seizure claims. Because that just was not discussed, that wasn't ruled upon, and the order is silent as to the actual seizure. So what... So I understand the basis of the claim, I believe I do, for the search of the house. What conduct was it that you contend was an unconstitutional search of the vehicle? It was consent. It was... Our position was always that there wasn't voluntary consent, so therefore... Okay, so... But they had to do something. So they could have... It could have been when they opened the door and took the dogs out of the vehicle that you view that as a search, or it could be when they looked through the windows of the vehicle at the dogs. I mean, what is the conduct that's at issue for this search that you assert was based on invalid consent? I think it would be just the looking at the taking the dogs out and looking at them in that regard. Okay. So the search and the seizure basically happened contemporaneously at the same time. As to the car, Your Honor? Yes. Yes, Your Honor. I think that's fair. Okay. I think the seizure of the other dogs that were in the home is slightly different. Okay. Can you respond on the conversion claim? There's an argument that was made, I think, for the first time that we lacked jurisdiction over that claim because either the State of Nevada or some political subdivision wasn't named as a party. I mean, I think my answer to that is I think Ms. Anderson's right, based on the reading of the statute. Unfortunately, we're four years into litigation, and this was something that perhaps we would have been able to fix or ask, leave to amend the complaint if this had been brought up earlier. And it wasn't in front of the district court, but I understand. It's a matter of subject matter jurisdiction, right? Yes, Your Honor. I mean, we have to reach it at any time, whether it's considered by the district court or not. So since it turns on fatality, could you amend the complaint to bring the claim, or would it be barred by the 11th Amendment? I think we could move to leave for amend to try to amend the complaint to add it. To add a claim against the State of Nevada in federal district court. It wouldn't, not the State of Nevada, to add Las Vegas Metropolitan Police Department, because we already named Clark County. So Ms. Anderson's claim is specific to Detective Southwell, so we would have to move to amend the complaint to add Las Vegas Metropolitan Police Department to the conversion claim only. Does this statute apply to local officers or just to state employees? I didn't get the sense that Southwell was truly a State of Nevada employee. She's a subsidiary, Your Honor. So the Las Vegas Metropolitan Police Department is sort of a subsidiary of Clark County, if you will, with their own rules and regulations. But the financial component is still hooked to Clark County. But does the statute apply to her? The statute where you have to name the state or a political subdivision? I believe that it looks like Ms. Anderson's correct in that it is a, since it is a subsidiary, a county is a subsidiary of the state. I think that argument is, I think, yes. So your conversion claim, the state law conversion claim, relies on an unlawful act, wrongfully seizing, taking possession of Ms. Askew's property, her dogs. If we conclude that the officers were acting lawfully under the statute, does that defeat the conversion claim? No, Your Honor, it doesn't, because I think a reasonable jury could still find that the defendants did not find specific findings that each dog was treated cruelly. In fact, some of the dogs had regular body condition scores, yet they were still taken. And so we've got them taking the dogs, all of the dogs. So no, I do not think it defeats the conversion claim, even if the code is constitutional, which we don't believe it is. So there was a stipulation, wasn't there, for 12 of the dogs? Was she agreed to having 12 of the dogs placed in other homes? Yes, after some very persuasive discussion by the court. That was not the initial stipulation. The court pushed for that, and that ultimately, the stipulation was amended in alliance with what the court had asked. So the stipulation, however it came about, exists. So how does that affect the conversion analysis? Do you think she has a claim for conversion based on the 12 dogs that she agreed could be rehomed? I do, because I think we still have them originally taking the dogs and making them their own initially. And I think that should still be, a reasonable jury could find that they shouldn't have converted the dogs. Because some of these dogs, under the code, they have to be treated cruelly. All the dogs should have been treated cruelly for them to even take the dogs to begin with. And so I think a reasonable jury could find that some of these dogs were not treated cruelly and therefore were converted when they were taken. Okay, you have just a little under two minutes. Do you want to save that? Yes, ma'am. All right, so we need to set the clock. And Mr. Dillard, are you going first? Yes, Your Honor. All right, when you're ready, please go ahead. Thank you. May it please the court, Tom Dillard for the appellees, Clark County, Clark County officers, Allsway, Clevenger, Bunnell, and the Animal Foundation. Your Honors, I'm going to take eight minutes of the time and reserve seven for Ms. Anderson to conclude the response. The decision of Judge Gordon, the District of Nevada, should be affirmed in this case as published decision. With respect to the three principal claims for relief, those derived in the Fourth Amendment, procedural due process, as well as a state law conversion claim, the Judge Gordon, there was a variety of arguments made with respect to the infirmities of the Section 1903 Fourth Amendment claim. He seized upon the Heck argument, which certainly is a good one and ought to be affirmed. The evidence in the record establishes that the convictions for which the plaintiff pled to Ms. Askew were based on the incriminating evidence directly that flowed from the search and seizure and the taking of the two dogs, one in the vehicle, Jester, and one in the home, McDaniel. The Fourth Amendment claims sound in an alleged tainted consent by the law enforcement officer, not the county defendants, with respect to both the vehicle and the home. But given that the conviction admitted that there was a factual basis that she was in possession of and had ownership interest of dogs that were abused or neglected, that didn't have sufficient drink and food, as evidenced after they were taken into possession after seizure and looked at by the veterinarians, and then specific evidence of those dogs' health condition was the basis for those convictions. Not anything about the lead up or the backstory as to why law enforcement was called to the home at all or general observations about the 18 dogs in general or many dogs that were out there. The evidence for which the convictions were based on were directly related to what those health conditions were, which were ascertained after the seizure. So the convictions certainly seek to undermine the searches that yielded all the incriminating evidence in possession of those two dogs. The district court was correct to decide the seizure, if I'm saying that correctly, in the Whitaker v. Garcetti line of heck cases that address searches and seizures. And when the incriminating evidence is obtained from those searches, the convictions are necessarily impaired or would be impaired with a successful civil action. So, Mr. Dillard, I don't understand your opposing counsel to be trying to distinguish those cases, but instead, or to say those cases were wrongly decided, but instead she's arguing that there is no factual basis for the plea. That, or at least that's what I understood her argument to be, that we don't have any specific information that would suggest that, you know, if you allowed the case to proceed, that would necessarily invalidate the convictions. So how do you respond to that? Thank you, Your Honor. This court en banc decided a case about three weeks ago to the name of Lemos v. County of Sonoma. I believe Judge Bress was in the majority opinion on that. The analysis of that en banc decision was to examine the record, look at the record to see what, if the underlying factual basis for the convictions would, if the civil cases prevail, would negate the validity of the convictions. So what we have, as pointed out by Judge Bress, is a very distinctive factual record with the motion to the suppress. We certainly have the bind over and the declaration of the officer that was submitted for the charges, that declaration was attached to the state's opposition to the motion to suppress. That motion to suppress effectively was a motion to dismiss. As stated in the motion, it sought to exclude all the evidence that, the exclusive evidence that makes up the basis for these charges. At that time, it was six dogs. She ultimately only pled to the two. Um, that motion to suppress argued that all observations derivatively concluded by the officers, by veterinarians, by the custodians, who took these animals into their care, were all strict as point fruit of the poisonous tree from those searches when the dogs were taken into possession of the county. So the factual record is clear. The state did not make any opposition to that assertion that effectively that motion to suppress is a motion to dismiss as well. It simply attached the declaration of the officer as the evidence that there was consent. That issue was litigated by the state court and found that there was, and that's more of the estoppel argument. But with respect to Heck, we don't have any evidence at all in the record that suggests that these dogs were below the criminality level of being abused and neglected other than what was derived after they were taken into custody of the state. So turning to the issue that was raised by counsel for defendant Southwell, that the plaintiffs didn't name the state. Is it your view that it's sufficient that they named Clark County as a defendant? Judge, frankly, that's an argument for Ms. Anderson. In respect to the county defendants, they did name the county and then county officers individually. That argument was made by Las Vegas Metro because they sued, and Metro is a distinctive political subdivision of the county. They sued the officer, but not the police department. And so I would reserve that to Ms. Anderson to respond to, Your Honor. All right, but it is not your, I understand that that was her argument, but it's not your position that there was a problem, a subject matter jurisdiction problem with respect to the county defendants? I make no argument about subject matter jurisdictions on that basis. Yes, Your Honor, that's correct. Is the argument, would the argument not apply to your clients equally if it were correct? Well, yes, Your Honor, but in this case, Ms. Arminian, the counsel of the plaintiff, did name the county. As I understand the argument, you have to name the political subdivision if you're gonna name an officer of it in a single complaint. And naming just an officer without naming the entity is invalid under MATA law. But in the county case, they named both the political subdivision and the individual officers. All right, so your opposing counsel argued that there were, I guess, factual disputes about whether the officers lawfully seized the dogs and that was sufficient for the conversion claim to go forward. How do you respond to the conversion claim? Well, Your Honor, under Nevada law, conversion sounds in a permanent or at least indefinite taking. The statute that was operated under by the control officers did not leave any discretion, frankly. If they believed that these animals were in unhealthy condition, they must seize them. That was the statute in which they were operating under. They shall take them into custody. That's a temporary basis, though, under the statute, under the, I should say, the ordinance, which gives, in this case, the plaintiff 72 hours to either post a bond or file a petition. She waited longer than that, but she did file a petition. And then ultimately, all her rights under ownership interest in those dogs were extinguished in the criminal court proceedings through a preliminary injunction denial and a summary judgment denial. So both on the seizure end and ultimately in the adopt out end, there was legal justification as a matter of law to dispose of any conversion claim. All right, so we've taken you over time. Unless my colleagues have any other questions, let's return to Ms. Anderson. Thank you, Your Honor. Okay, thank you, Mr. Dillard. Good afternoon. I'm Lisa Anderson. I'm here for Sandra Southwell, a detective with the Las Vegas Metropolitan Police Department. Earlier, I believe that I heard Ms. Armeni essentially say that, you know, with regard to the search, at least the issue of the entry into the house and the search in the house, that there could be issue preclusion with respect to that, that the issues would be identical in the suppression hearing as opposed to in the proceeding here today. But then she began to make some argument about the fact that the justice court never reached the issues relating to the actual seizure of the dog. And so I wanted to just sort of jump right to that particular point because I do believe that issue preclusion provides a sound basis for you to rest your decision affirming Judge Gordon's order. Because again, in the suppression motion where Ms. Armeni framed the issues on behalf of Ms. Askew, she stated that the criminal conviction or the evidence that would base the criminal conviction was exclusively from the direct and derivative fruits of the search of the home and the vehicle. So that was the way that she initially framed the issues that were going to take place in the suppression hearing. Then she asked that the court order the suppression of all evidence in support of the state of Nevada's complaint and to include both also the dogs, which they would not have had if they had not been seized at the time, and any other direct or derivative evidence acquired by the state of Nevada as a result of the illegal intrusion. So that's sort of general, what was the direct and derivative evidence that they got as a result of the search? Well, she answers that question again in her suppression motion because she sets out that that evidence, the direct and derivative fruits of the search, were the dogs themselves, the six for which she was facing the criminal charges, the 12 for which no criminal charges were made, some in the house, some in the car. She then says any of the dogs' veterinary records. She goes so far as to say any of the veterinary records that were obtained after the dogs were removed from Ms. Askew's home, the records from the Animal Foundation, the records from the Desert and Animal Hospital, which was the evidence that Detective Southwell testified in her deposition was necessary in order for her arrest to be supported because there could have been medical reasons that the dogs were underweight. And so you'll see in the declaration of warrant that Detective Southwell sets out very explicitly the fact that once the dogs were in the state's custody and they were receiving adequate nutrition, adequate hydration and medication, that they gained weight and otherwise flourished, which was the basis for the conviction relating to the deprivation of necessary sustenance. But your opposing counsel seems to be suggesting that the HECBAR shouldn't apply because there's other evidence that could support the conviction, such as observations or videos or photographs from before the search and the seizures, or the seizures of the dogs in the search of the house and the car. How do you respond to that? Is there evidence that could support these convictions outside of seizing the dogs? And that answer was specifically answered by my client in her deposition where she said that she couldn't have arrested Ms. Askew unless and until the dogs were in the state's custody and they were able to rule out the fact that these were apparently special needs animals with other health conditions and they needed to determine whether in fact their condition was based upon the deprivation of the food, drink or medication. And that's found at three excerpts of record 188 where she said that they needed the seizure of the dogs and the medical evaluation of the dogs in order to prosecute those charges. So again, getting back to the suppression hearing, I think it's also very important since Ms. Armeni stated that the court didn't consider the seizure of the dogs and what have you, even though that was the gist of her motion because within the transcript of the hearing itself, the court talks about what the gist of the hearing is because Ms. Armeni began to object to some of the questions that were being asked and the court made a summary and said, I understand that the gist of your motion relates to the entry into the home and that everything else sort of flows thereafter, including the seizure of the dogs. And not once, not twice, but three times, Ms. Armeni agrees with the court's summation that once the entry into the house took place, that everything that occurred after that was the fruit of the poisonous tree. In fact, at one point the court said, I think the discussion, and I think you would agree, is that they illicitly obtained consent and that the dogs being removed, so the seizure of the dogs, whether it by force or by surrender or consent, are fruit of the poisonous tree and it all deals with what happens to go in. Would that be fair to say? And Ms. Armeni answered, no, that's fair, your honor. And so here again, we see that that particular issue, although not done in a divisive manner like Ms. Armeni is trying to proceed with today, was in fact considered by the court because the court followed her lead in the framing of the issue and the issues are identical in this case and the suppression hearing. In addition to that, I think that it's important for the court to understand that we've heard what Detective Southwell had to say about what needed to happen with the medical evaluation of the dogs. Quite simply, in Ms. Armeni's suppression motion, there was actually a remedy request in addition to the suppression of the evidence that the dogs be returned to Miss Askew. So there was an expectation that if the court were to grant the suppression motion that the dogs would need to be returned to Miss Askew because there would be no basis for the state to continue to prosecute. And so with that type of a remedy request, it's abundantly clear that the two issues were absolutely identical and that we satisfy that element of issue preclusion. I think that that also applies to the Heck argument because again, unlike a situation like in the Lockett case where the plea was basically, the evidence in the search was for intoxication, a DUI, and then it was pled to an entirely different charge, reckless driving. The information that they got in the search would not have any, there was nothing in the record relating to the search that would invalidate the plea. But here, based on even the arguments that are made in the suppression hearing, we have a very full record that shows what evidence was used in order to reach that plea. And so once again, as Mr. Dillard echoed, I would sincerely ask that you affirm Judge Gordon's decision. And I would also just wanna clear one quick misconception, which is there's been repeated statements made on the record that the Las Vegas Metropolitan Police Department is a political subdivision of Clark County. That's not accurate. We are actually a political subdivision of the state of Nevada. And that's why, you know, kind of touching on those arguments about whether it would equally apply to the state or the county, we don't have to reach that because we are actually a political subdivision of the state and are afforded those protections. The other issue with respect to conversion that I would like to address was the issue about whether Ms. Armeni could go back to the district court and amend. We specifically cited to that. The answer is no. In, we have a Nevada Supreme Court opinion that's on point. That's the Washoe Medical Center case. And basically what the effect of the failure to name the state at the time, it makes the action void. And because the action was void, it's as if it never existed and it therefore cannot be amended. So, you know, she does not have that option, you know, pursuant to Nevada law. I'm not a hundred percent sure whether there's more time showing that it keeps... No, it's going the other direction because you're about two minutes over. All right. But once it hits zero and it starts going back up, that's the time that you're over. My apology. All right. Thank you. I appreciate the opportunity to argue. All right. Ms. Armeni, you have a couple minutes for rebuttal. You're still muted. I apologize. There you go. Okay. Your Honor, respectfully to Mr. Dillard, a motion to suppress and motion to dismiss are very different. And as I stated earlier, a motion to suppress does not automatically stop a criminal case. The prosecutor here could have proceeded forward. I appreciate what the arguments are from Ms. Southwell, but frankly, Ms. Southwell, in her declaration of arrest, specifically put some of these factors that I suggested to the court, these facts that happened before the search of the house, those were in her declaration of arrest as additional reasons for probable cause. So we're not talking about fruits of a poisonous tree here. We're talking about what occurred before the search of the house. Frankly, I know this is, again, I'm going to come back to the suppression. The suppression hearing was basically the argument and what the court decided on was the search of the house. That's what the order said. There was no discussion of the seizure. And what happened after the search of the house is the defendants proceeded to come out of the house and have another discussion with Ms. Askew about consent. So I submit to the court, if they really had this evidence that they thought something was wrong with these dogs, they had plain sight, they had inevitable discovery, they could have taken these dogs, but yet they sat outside for another 20 minutes trying to convince Ms. Askew that she needed to sign the consent form under the guise that she could get her dogs back in 24 hours. That is the reason she signed the voluntary surrender form because it's on video where she says, I have no other choice, and they tell her, you can get your dogs back in 24 hours. And that leads to the, I don't have much time, but the fact that we believe the code is unconstitutional because it's in direct contradiction to the criminal statute. This code is talking about an elect to prosecute, which envisions criminal action, but yet it contradicts the criminal statute that requires a conviction. Ms. Armeni, before you conclude, and Judge Beatty, if I may, I know we're over time. Go ahead. What is your client hoping to get out of this lawsuit? I mean, ideally her dog's back, but that's going to be a tough road to haul. But, you know, we feel very strongly that the seizure was illegal, that the search was illegal, that the dogs, not, you know, all dogs she was operating, granted she didn't have a license, but the idea was as sort of a foster home, a place where these dogs could go, because a lot of these dogs were special need dogs. So the understanding is, I mean, there was a constitutional violation here. She was, the code is unconstitutional that her dogs were taken. And if the code is not looked at, had the code not been written in the way it was and not been unconstitutional, I think there would have been a very different outcome. All right. Thank you. Thank you. Unless my colleagues have any additional questions, thank you very much, all of you for your arguments today were very helpful and we are adjourned. Thank you. Thank you. All rise.
judges: OWENS, BADE, BRESS